IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAYMOND ALPHONSO TAYLOR,

      Plaintiff,

v.                                        No. Civ. 01-0368 BB/RHS

DON STEWART, et al.

      Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    1. THIS MATTER comes before the court upon the Motion for Summary Judgment of Defendants Joseph Corral and Alfred Jaramillo, filed November 12, 2003. [Doc. No. 40], and Plaintiff's Motion for District of New Mexico Local Rule-Civ. 7.3(b) and Motion for Extension of Time to Reply to Defendants' Reply in Support of Motion for Summary Judgment, filed December 15, 2003. (Doc. No. 49). Plaintiff's Motion to Deny Summary Judgment of Defendants Joseph Corral and Alfred Jaramillo (Doc. No. 44) and Plaintiff's Response to Defendant's Martinez Report (Doc. No. 45) were filed on November 24, 2003. Both of those documents presented Plaintiff's extensive arguments opposing summary judgment in this case. The summary judgment issue has been fully briefed. The Court therefore recommends that Plaintiff's Motion for Extension of Time to Reply to Defendants' Reply in Support of Motion for Summary Judgment be denied.

2. The Court recommends that Plaintiff's Motion for District of New Mexico Local Rule-Civ 7.3 (b) be granted and a that copy of all the Local Civil Rules should be sent with this Order to Plaintiff.  (Although Defendants' citation of D.N.M.LR-Civ 7.3  makes no difference in the substantive issues of the case, the Court notes that  D.N.M.LR-Civ 7.4 is actually the applicable rule which applies to opposed motions where any party appears *pro se.*)  However, despite the fact that Plaintiff apparently lacks access to the local rules, the Court has reviewed all the pleadings filed by Plaintiff and finds that they conform to the local  and the federal civil procedure rules and that they competently address all of Plaintiff's due process claims.

3. Although Plaintiff did not file any pleading which he called a response to the summary judgment motion, Plaintiff's Motion to Deny Summary Judgment of Defendants Joseph Corral and Alfred Romero is actually a detailed response to Defendants' motion.   Having considered the summary judgment motion, the response and the entire record, the Court finds that the motion is well taken and recommends that the motion be granted.

4. Plaintiff, Raymond Alonso Taylor, who is incarcerated and proceeding *pro se* and *in forma pauperis,* filed an original and a supplemental civil rights complaint in this case alleging that when he was imprisoned at the Corrections Corporation of America Torrance County Detention Facility ("CCA-TCDF") he was unconstitutionally denied access to the courts, denied adequate medical treatment, and denied due process in connection with his placement in segregation beyond his scheduled release date from disciplinary detention.  The district court, considering both documents together as the "complaint",  *sua sponte* dismissed this case in its entirety for failure to state a claim.[Doc. No. 11].

5. Plaintiff appealed the dismissal of his access to the courts and due process claims to the Tenth Circuit Court of Appeals. The Appeals Court affirmed the district court's dismissal of Mr. Taylor's claim that he was denied his constitutional right of access to the courts. The Court "reverse[d] the dismissal of Mr. Taylor's claim that his due process rights were violated by his two and one half month placement in segregation and remand[ed] to allow the district court to undertake the requisite evidentiary analysis," explaining that the court "must, in particular determine whether the period of duration is itself atypical and significant." Order and Judgment, Tenth Circuit, October 22, 2002, at p. 5.

6. Defendants Corral, the manager in charge of the segregation unit during the relevant time period, and Jaramillo, the hearing officer in the original hearing which resulted in Plaintiff's disciplinary segregation, moved to dismiss the remanded case under Fed. R. Civ. P. 12 (b)(6). [Doc. No. 27]. This Court denied that motion, finding that the record was not sufficiently developed to undertake the evidentiary analysis required by the Tenth Circuit mandate. Accordingly, the United States Magistrate Judge ordered defendants Corral and Jaramillo to submit a report concerning Mr. Taylor's disciplinary segregation, see Martinez v. Aaron, 570 F.2d 317, 320 (10th Cir. 1978), and Plaintiff was informed that he would be given an opportunity to present conflicting evidence to controvert the facts set out in the report. See Hall v. Bellmon, 935 F.3d 1106, 1109 (10th Cir. 1991). The parties were notified that the Martinez report and Plaintiff's response to the report would be considered in deciding whether to grant summary judgment on Plaintiff's claims. The Martinez report, the motion for summary judgment, a response to that motion and a reply have been filed and briefing is complete on the remaining due process claim in this case.

-3-

7. A summary judgment motion may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party on that issue. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-252 (1986). The evidence will be construed in the light most favorable to the nonmovant, <u>Magnum Foods, Inc. v. Continental Casualty Co.</u>, 36 F.3d 1491, 1497 (10th Cir. 1994), and all doubts and factual inferences will be resolved in favor of the existence of triable issues of fact. <u>See Seamons v. Snow</u>, 206 F.3d 1021, 1026 (10th Cir. 2000).

8. The Fourteenth Amendment prohibits any State from depriving a person of life, liberty, or property without due process of law. A prisoner's liberty interest may arise either from the Due Process Clause itself or from state law. <u>Hewitt v. Helms</u>, 459 U.S. 460, 466, 103 S. Ct. 864, 780 (1983 (1983). "The Due Process Clause standing alone offers prisoners only a narrow range of protected liberty interests."<u>Abbot v. McCotter</u>, 13 F.3d 1439, 1442 (10th Cir. 1994).

9. Generally, a prisoner has no inherent constitutional right to enjoy a particular security classification. <u>Moody v. Daggett</u>, 429 U.S. 78, 97 S. Ct. 274, 293 (1976); <u>Templeman v. Gunter</u>, 16 F.3d 367, 369 (10th Cir. 1994). However, a liberty interest may arise if the change in classification restricts the inmate's freedom in such a way as to "impos[e] atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." <u>Sandlin v. Conner</u>, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).

10. The following facts are undisputed and have been assumed to be true for purposes of the motion for summary judgment. On January 14, 2001, plaintiff was placed in prehearing detention in the facility segregation unit for two disciplinary reports for alleged infractions of

prison regulations 15-1.5 C19 (repeated violations of minor rules) and 15.-1.5C14 (possession of contraband). Plaintiff's Complaint [Doc. No. 1] at Section D, claim 1. On January 22, 2001 and January 24, 2001, Plaintiff received hearings on the alleged offenses and was found guilty of both charges. He was given a term of fifteen days disciplinary segregation on the first charge and thirty days disciplinary segregation on the contraband charge, for a total of 45 days of disciplinary segregation, with credit given for time served. Martinez Report Exh. B-1 and B-2.

    11. Plaintiff was not released from segregation on his tentative out date of February 26, 2001. Plaintiff was informed that on March 2, 2001, the Administrative Segregation Committee would review his case and determine if administrative segregation would continue, or if he would be released to general population. Exh. A.[1] On March 5, 2001, segregation placement forms were completed which stated the justification for placement of Plaintiff in administrative segregation. Exh. B, Segregation Placement Form #10-100B; Exh. C, Segregation Confinement Record. On March 8, 2001, the Administrative Segregation Committee formally determined that Plaintiff was to remain in administrative segregation due to his past history of non-compliance with staff. Plaintiff received a copy of that report, Exh. D, and he filed a formal grievance in response to that decision. Exh. E. Plaintiff's placement in administrative segregation was reviewed weekly until he was released at the end of April 2001. Exh. F.

    12. Plaintiff characterized his claim as arising out of placement in disciplinary segregation for two and one half months past his tentative out date. The Tenth Circuit remanded this claim on

---

[1] All exhibits refer to the exhibits attached by Defendants to the Martinez report unless otherwise noted.

the question of whether Plaintiff's continued presence in disciplinary segregation beyond the tentative out date violated his due process rights.

13. Defendants move for summary judgment on the due process claim on the grounds that (1) Plaintiff's disciplinary segregation was not atypical and significant, (2) Plaintiff's placement in administrative segregation was proper based on the finding that he presented a threat to security and staff safety, (3) Plaintiff had no liberty interest in being immediately notified about his change in security classification from disciplinary segregation to administrative segregation, (4) Plaintiff was notified of his change in security classification from disciplinary segregation to administrative segregation, and (5) the length and conditions of Plaintiff's stay in administrative segregation were not atypical and significant. Defendants also argue that they are entitled to summary judgment because Plaintiff admits that he has suffered no damages, that he is pursuing his claim in bad faith and that he has not met his burden of proving that these Defendants were personally involved in the alleged constitutional violation.

A. <u>Plaintiff's Disciplinary Segregation</u>

14. On January 13, 2001, Plaintiff was accused of violation of Major Offense No. 15-1.5C19, Repeated Violation of Minor Rules, for exposing himself three times to Corrections Officer L. Thomas within a thirty day period. The disciplinary report stated that Plaintiff wrapped his towel around his shoulders after his shower and exposed himself below the waist to her. She was instructed to film his behavior and that film was found to support the charge by the hearing officer, Defendant Jaramillo. Mr. Jaramillo concluded that Plaintiff's "actions pose[d] a threat to [the] security of [the] institution." Exh. B-1. Prior to the hearing, Shift Commander

Edgmon placed Plaintiff in prehearing detention because of "substantial threat of violence upon others" and

"an urgent need to separate inmate for his own safety."

15. Plaintiff argues that the CCA-TCDF showers are directly in front of the unit control center which exposes the prisoners to staff members and that he was not naked and exposed when he was not in the designated shower area. He stated that Officer Thomas "choose [sic] her employment in a male prison with the forewarned knowledge that she would at some point encounter male prisoner nude bodies." Plaintiff's Motion to Deny Summary Judgment at page 3. He argues that "this wicked man[e]uver and violation of CCA-TCDF policy...resulted in Plaintiff receiving another disciplinary report for Possession of Contraband." Id. at p. 4.

16. After the hearing, Plaintiff was given 15 days in disciplinary segregation for this offense. With credit for time served in pre-hearing detention, Plaintiff's tentative out date was January 27, 2001.

17. When Correction Officer Baca went to Plaintiff's general population cell unit to pack Mr. Taylor's property after he was confined to the segregation unit, Officer Baca found a piece of metal 5 1/8 inches long concealed inside an ink pen and a local phone book, both of which were prohibited items for Plaintiff to possess. Plaintiff was sentenced to 30 days in disciplinary segregation for possession of contraband consecutive to his past sanction. Plaintiff's tentative out date was set for February 26, 2001.

18. Both the offense of repeated violation of minor rules and possession of contraband are categorized as "major offenses" under CCA policies. The penalties that may be imposed for major offenses include 1-30 days of disciplinary segregation per offense with a maximum of 60

days for all offenses arising from one incident. Exh. A to <u>Martinez</u> report (filed under seal) Section 15-1.5D2 (f).   The penalties which Plaintiff received are within the applicable facility guidelines, were  not unconstitutionally atypical or significant under the <u>Sandlin</u> standard  and did not violate the Due Process Clause of the Fourteenth Amendment.

B.  <u>Plaintiff's</u> <u>Administrative</u> <u>Segregation</u>

19.  Plaintiff alleges that his rights were violated in connection with his placement in administrative segregation because procedural requirements were not followed in placing him in that category, that there was no cause to place him  in administrative segregation, and because he was kept in segregation for  too long a period of time.

20.  Plaintiff  received written notice of the change in his confinement status on March 2, 2001, four days after his tentative release date for disciplinary segregation.  He received additional written notice on March 8, 2001 that the Administrative Segregation Committee met and decided that Plaintiff should remain in administrative segregation due to his past history of noncompliance with staff and because he was a threat to security.  The Court does not find that four days placement in administrative segregation before Plaintiff was provided with  written notification is an "atypical and significant hardship".  Determinations regarding whether an inmate is a security threat are left to the discretion of the prison officials operating the institution.  See <u>Hewitt v Helms</u>, 459 U.S. 460, 474. (1983).

21.  Plaintiff claims that at the conclusion of his disciplinary segregation confinement that he was illegally placed in administrative segregation because the finding that he was a security threat  was "an outright lie."  Plaintiff's Motion to Deny Summary Judgment, p. 9.  He also claims

that weekly reviews of his case by the Administrative Segregation Committee were done inaccurately.

22. "Prison administrators ...should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v.Wolfish, 441 U.S. 520, 547, 99 S. Ct. 1861, 1877 (1979). Prison officials have broad discretion to place inmates in administrative segregation. " If confinement in administrative segregation is lengthy...periodic review of the inmate's status is required." Hewitt, 459 U.S. at 474.

23. The Court has no evidence that the decision to place Plaintiff on administrative segregation status was made for any illegitimate reason. Plaintiff's placement in administrative segregation was reasonable as a matter of law and was "well within the terms of confinement ordinarily contemplated by a prison sentence." Penrod v. Zavara, 94 F.3d 1399, 1409 (10th Cir.1996). Mr. Taylor received a weekly review during his administrative segregation which satisfied the Hewitt requirement for periodic review of his status.

24. The final claim that Plaintiff makes regarding his administrative segregation is that the length of his stay and the conditions of his confinement were atypical and significant as a matter of law. States may create liberty interests which are protected by the due process clause of the Fourteenth Amendment. Sandlin, 515 U.S. at 484. However, these interests are limited to restraints on a prisoner that impose an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. Placement in administrative segregation for two months because of legitimate concerns about prison security did not impose an atypical or significant hardship on Plaintiff. See Talley v Hesse, 91 F.3d 1411, 1413 (10th Cir. 1996); Jones

v. Fields,1996 WL 731240 (10th Cir. 1996)(unpublished)(holding that placement in administrative segregation for fifteen months was not an "atypical and significant hardship")  Plaintiff never claimed that he was treated any differently from anyone else in segregation and, in fact, requested at one point in his disciplinary segregation confinement that he be allowed to stay in segregation. See Exh. H.  Two of Plaintiff's seven weekly reviews have incorrect inmate numbers on the forms, however, Plaintiff's claim that these clerical errors  demonstrate constitutional violations is without merit.

C. Bad Faith

25. Having determined that Plaintiff's claims do not rise to the level of constitutional deprivation of liberty interests, no ruling on  Defendants motion to dismiss this case because of Plaintiff's "misuse of the court system" is necessary.  However, the Court notes that Plaintiff's letters to prior defense counsel were improper and demonstrate a lack of respect for the legal system and for this Court.

D. Personal Involvement of the Defendants in the Alleged Constitutional Violations

26. In order to successfully sustain a §1983 claim under the Fourteenth Amendment, a plaintiff must show personal involvement or participation in the alleged wrongful conduct. Grimsely v. MacKay, 93 F.3d 676 (10th Cir. 1996).  The Martinez report and the other records before the Court indicate that Corral's only involvement was to deny Plaintiff's request to remain in segregation beyond his first tentative out date of January 27, 2001.  Exh. H.  He has no personal responsibility for Plaintiff's continued presence in segregation and is entitled to a judgment in his favor as a matter of law.

27. Defendant Jaramillo was the hearing officer who presided over the original hearing which resulted in Plaintiff's disciplinary segregation, however he was not involved in the decision to keep Plaintiff in segregation beyond the tentative out date, the basis for the violation of due process rights claim which was the only remaining claim remanded by the Tenth Circuit to this Court. Defendant Jaramillo is also entitled to a judgment as a matter of law.

28. Upon thorough consideration of the parties arguments and evidence in light of the applicable law, the Magistrate Judge finds that the Plaintiff's due process rights were not violated by his placement in either disciplinary or in administrative segregation. As an independently sufficient reason for granting summary judgment in this case, the Court concludes that the Plaintiff has not met his burden of proving the defendants were personally involved in the alleged constitutional violation. For the foregoing reasons, the Court finds that Petitioner's claims afford no basis for §1983 relief.

### Recommendation

The Court recommends that Plaintiff's Motion for Extension of Time to Reply to Defendants Reply in support of Motion for Summary Judgment [Doc. No. 49] be DENIED, that Plaintiff's Motion for District of New Mexico Local Rule -Civ 7.3 (b) be GRANTED and that the clerk be instructed to send a copy of the Local Civil Rules with this Order to Plaintiff and that the Motion for Summary Judgment of Defendants Joseph Corral and Alfred Jaramillo [Doc. No. 40] be GRANTED and that this cause be DISMISSED WITH PREJUDICE in its entirety. Any other pending motions are DENIED as moot.

Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to

such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

*Robert Hayes Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE